## SUBLETT v. HURST et al.

(Court of Civil Appeals of Texas. Texarkana. Feb. 5, 1914.)

1. VENUE (§ 22*)—JOINT DEFENDANTS—RESIDENCE.

Rev. St. 1911, art. 1830, providing that no inhabitant of Texas shall be sued out of the county in which he has his domicile, but that where the defendant, or all the defendants, reside without the state, suit may be brought in the county where the plaintiff resides, does not authorize suit against a resident of the state in a county in which he does not reside, but in which plaintiff resides, when a resident of another state is made a codefendant.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

2. VENUE (§ 22*)—RESIDENT AND NONRESIDENT DEFENDANTS.

That suit might be properly brought against a nonresident in the county of plaintiff's residence, where it was based on a contract payable there, as authorized by Rev. St. 1911, art. 1830, did not authorize suit there against a resident codefendant who resides in another county.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

3. VENUE (§ 22*)—CODEFENDANTS—RESIDENCE IN DIFFERENT COUNTIES.

Rev. St. 1911, art. 1830, provides that no inhabitant of the state shall be sued out of the county in which he has his domicile, except that where there are two or more defendants residing in different counties, suit may be brought in the county where any one of the defendants resides. Held, that the word "domicile" as so used implies more than a temporary sojurn in a given place, and hence, where one of the defendants had rented a farm in Oklahoma for the current year, and the other defendant was a resident of Texas in a county other than that in which plaintiff resided, suit against both could not be brought in the county of plaintiff's residence.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

4. CHATTEL MORTGAGES (§ 150*)—FILING—PLACE.

Rev. St. 1911, art. 5655, provides that every chattel mortgage shall be void as against creditors and subsequent purchasers in good faith, unless the instrument shall be filed in the office of the county clerk of the county where the property shall then be situated; or, if the mortgagor, or person. making the same, be a resident of the state, then of the county of which he shall then be a resident. Held, that where a buyer of horses in L. county gave a mortgage on them for the unpaid portion of the price, and immediately removed them to Oklahoma, where he kept them until he agreed to sell and deliver them to defendant in F. county, Tex., which he did, and the mortgage was not recorded until after the horses had been moved to Oklahoma, when it was recorded in L. county, such registration was ineffectual to preserve the lien against defendant.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–252; Dec. Dig. § 150.*]

Appeal from Lamar County Court; Rube S. Wells, Judge.

Action by G. C. Hurst and others against T. B. Sublett and another. Judgment for plaintiffs, and defendant, Sublett, appeals. Reversed in part.

In Paris, Tex., on May 18, 1912, appellee Hurst sold and delivered two horses to one Jackson, the other appellee. On the same day Jackson made and delivered his promissory note to Hurst, whereby he undertook, on October 1, 1912, to pay to "order G. C. Hurst, Paris, Tex.," the sum of $307, the purchase price of the horses. To secure the payment of the note he at the same time executed and delivered to Hurst a mortgage on the horses and two mules. On the day after the day he purchased the horses Jackson carried them to Bryan county, Okl., where he lived with his wife. May 25, 1912, the mortgage was filed in the office of the county clerk of Lamar county for registration. About November 7, 1912, in said Bryan county, Jackson contracted with appellant to sell the horses to him for $300, and to deliver same to him in Fannin county, Tex., where appellant resided. November 9, 1912, Jackson delivered

the horses to appellant, as he had agreed to, and the latter thereupon paid him the purchase price thereof as agreed upon. March 26, 1913, Jackson was arrested at his father's home in Lamar county for a felony charged against him, and was lodged in the Lamar county jail in Paris. Afterwards he was convicted on said charge and sent to the penitentiary. While he was in jail, to wit, on May 2, 1913, the suit resulting in the judgment from which this appeal is prosecuted was commenced in the county court of Lamar county against him and appellant by Hurst, who thereby sought, as against Jackson, a judgment for the amount of the note, and as against Jackson and appellant a foreclosure of the mortgage. Jackson made no answer to the suit. Appellant by a sworn plea claimed his privilege to be sued in Fannin county, where he resided. This plea having been overruled by the court, appellant answered, denying generally the allegations of the petition, and pleading specially as follows: "For special answer in this behalf, the defendant says that he purchased the mares in controversy in good faith from E. J. Jackson, the owner thereof, paying a valuable consideration therefor at the time, and without any notice, actual or constructive, of plaintiff's alleged mortgage lien, or any other legal or equitable claim against them; that at the time he so purchased said mares they were in the actual possession of said E. J. Jackson in Bryan county, state of Oklahoma; that said Jackson was a resident citizen of Bryan county, Okl., at the time defendant so purchased said mares, as well as at the time plaintiff's alleged mortgage was executed and filed in Lamar county, Tex.; that said E. J. Jackson was not a resident of Lamar county, Tex., at the time plaintiff's alleged mortgage was executed, nor at the time the same was filed for registration in Lamar county, nor was said Jackson a resident of Lamar county, Tex., at any time thereafter prior to the date this defendant purchased said mares as aforesaid; that the said mares were not situated in Lamar county, Tex., at the time plaintiff's alleged mortgage was filed with the county clerk of Lamar county, Tex., for registration, and that plaintiff failed to exercise due diligence to file said mortgage, or to comply with statutes giving lien, nor at any time thereafter prior to the date this defendant purchased said mares as aforesaid; that said mares did not remain in Lamar county, Tex., after said E. J. Jackson acquired possession of them, but that they were immediately removed by said Jackson from Lamar county, Tex., to Bryan county, Okl., and there kept by him at his place of residence until sold to this defendant, as aforesaid." After hearing the testimony the court instructed the jury to find in Hurst's favor as prayed for, and, on the verdict returned in accordance with his instruction, rendered judgment against Jackson for the amount due on the note, and de-

creed a foreclosure of the mortgage on the horses as against both Jackson and appellant. The latter alone appeals.

Gross & Leslie, of Bonham, and Wright & Patrick, of Paris, for appellant. Moore & Hardison, of Paris, for appellees.

WILLSON, C. J. (after stating the facts as above). In support of his plea claiming his privilege to be sued in Fannin county, appellant proved that at the time the suit was commenced against him, and ever afterwards, he resided in Fannin county, and did not reside in Lamar county. He further proved, quoting from the record, "that none of the exceptions to the exclusive venue of the county of one's residence mentioned in articles 1194 and 1585 of the Revised Statutes of 1895, and of article 2308 of the Revised Statutes of 1911, exist in this cause." He further proved that Jackson, during the years 1911 and 1912, resided with his wife in Bryan county, Okl., on the Lake West Farm; that the latter part of December, 1912, Jackson's wife went to her father's home in Lamar county on a visit; that Jackson rented a farm for the year 1913 at Bennington, Okl., and about January 1, 1913, while his wife was still visiting her father and his family, moved their household effects from the Lake West Farm to the farm at Bennington; that later, during January or February, 1913, Jackson left Oklahoma and went to New Mexico, it seems, to avoid arrest on a felony charge against him; that he returned from New Mexico between the 15th and 20th days of March, 1913, to his father's home in Lamar county, Tex., where on the 26th day of March, 1913, he was arrested on said charge and carried to Paris, where he was lodged in the Lamar county jail; and that afterwards, a short time before this case was tried, he was convicted on said charge and sent to the penitentiary. And he further proved that, unless the facts just stated made Jackson a resident of Lamar county, he was never a resident thereof after he purchased the horses of Hurst.

[1, 2] The statute in force at the time the suit was commenced declared that "no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile," except in certain cases—none of which are like this one, unless the following are, to wit: "3. Where the defendant, or all of several defendants, reside without the state, * * * in which case the suit may be brought in the county in which the plaintiff resides. 4. Where there are two or more defendants residing in different counties, in which case the suit may be brought in any county where any one of the defendants resides. 5. Where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the

defendant has his domicile." Article 1830, R. S. 1911. If Jackson at the time he was sued was a resident of the state of Oklahoma, by force of the exception numbered "3" above, he might have been, as he was, sued in Lamar county, where Hurst resided. But the fact that he might have been, and that appellant was a proper party to a suit to foreclose the mortgage, did not entitle Hurst to sue appellant there. "There is no provision of law," said the court in Hudgins v. Low, 42 Tex. Civ. App. 557, 94 S. W. 412, "that will authorize suit against a resident of Texas by joining him with a nonresident, in any other than the county of residence" of the former. So, if Jackson's contract was to pay the note in Lamar county, as appellant, it seems, assumes it was, he might, by force of the exception numbered "5" above, have been sued there, without respect to where he resided; but the fact that he might have been sued in that county, though not domiciled there, did not entitle Hurst to maintain his suit as against appellant in that county. Behrens Drug Co. v. Hamilton & McCarty, 92 Tex. 284, 48 S. W. 5.

[3] It seems, therefore, that unless the case is within the exception numbered "4" above, appellant's plea should have been sustained. We think it is not within that exception, because it appeared that Jackson was not a resident of Lamar county within the meaning of the statute. "Domicile," as used in the statute, we think implies more than a mere temporary sojourn in a given place. The testimony showed that Jackson had leased land for the year 1913 in Oklahoma, and that if he had a domicile it was in that state. If he did not have a domicile there he should be regarded as a transient person, for there is nothing in the testimony indicating an intention on his part to become a resident of Lamar, or any other county in this state. On the contrary, the inference from the testimony rather is that, having abandoned his residence in Oklahoma, he was in the attitude of a fugitive from justice, without a fixed place of residence. We think appellant's plea of privilege should have been sustained; but as, on another assignment, the rights of the parties can now be determined and the litigation finally disposed of in the way, we think, it must be in the end, we have concluded not to reverse the judgment so far as it is against appellant, and remand the cause, with instructions to transfer same to Fannin county for trial of the issue between Hurst and appellant, as otherwise we would, but to dispose of the appeal by sustaining the other assignment referred to.

[4] Appellant insists, and we agree, that when he purchased the horses of Jackson he did not take them subject to the mortgage, but acquired, as against Hurst, a good and perfect title to same. It was conclusively shown that Jackson, on the day after he purchased the horses of Hurst, carried them to his home in Oklahoma, where he kept them until more than five months thereafterwards, when he entered into a contract with appellant to sell same to him and to deliver them to him in Fannin county, and that Jackson, in compliance with his contract, afterwards did deliver the horses to appellant in Fannin county. It was further conclusively shown that appellant, acting in good faith and without any actual notice of Hurst's claim, paid to Jackson the purchase price agreed upon between him and Jackson. It was further conclusively shown that the mortgage in favor of Hurst was not filed for registration in Lamar county until five or six days after the date the horses were carried by Jackson to Oklahoma, and it was not shown same was ever registered either in Bryan county, Okl., or in Fannin county, Tex. The statute declared that "every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage of or lien upon personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this state, then, of the county of which he shall at that time be a resident." Article 5655, R. S. 1911. It conclusively appearing, as stated above, that Jackson was not a resident of this state at the time he purchased the horses, and that on the day after he purchased same he carried them to his home in Oklahoma, and it further conclusively appearing that the mortgage was not filed in the office of the county clerk until five or six days after the horses were carried to Oklahoma, it is clear, we think, that the registration of the mortgage in Lamar county was not notice to appellant, and that as to him it was void. By the plain language of the statute, to render the registration of the mortgage effective as against an innocent purchaser, as appellant was, the horses must at the time of such registration have been in Lamar county. Stirk v. Hamilton, 83 Me. 524, 22 Atl. 391; Hockaday-Gray Co. v. Jonett, 74 S. W. 71; Oxsheer v. Watt, 91 Tex. 402, 44 S. W. 67. It follows that the judgment is wrong in so far as it is in favor of Hurst against appellant. It will be reversed in so far as it is against appellant, and judgment will be here rendered that as against him said Hurst take nothing. In so far as it is in favor of Hurst against Jackson it will be affirmed.